BREAUX, C. J.
Plaintiff claims damages in the sum of $2,102.50 for the loss of two fingers while engaged as engine helper or switchman in uncoupling cars in the employ of defendant.
The uncoupling of cars was one of the duties in which he was engaged on the 14th of January, 1912, at about half past 11 o’clock a. m. Owing to defendant’s negligence, and to its defective equipment, two of his fingers were caught, as he was taking out the pin in the couplers between two of the cars, and were crushed, rendering their amputation necessary. 1-Ie charged that he did not have a safe place to work, nor safe appliances with which to work.
He pleaded the protection afforded by the federal Safety Appliance Act, relating to safety appliances.
Also that the car coupling was not in good repair, rendering it impossible to handle with safety the coupler extending out at the end of the car. That the unsafe condition was known to the defendant company.
He urged the application of the federal Employers’ Liability Act.
He also pleaded that this loss is of moment to him, and that he has suffered intense pain, for which he is entitled to damages, and for the humiliation caused by the loss of part of his hand. He could not work in consequence for 41 days. 1-Iis wages were $2.50 per day.
The defendant denies all liability, and charges that plaintiff’s negligence is the cause of the loss of which he complains.
The judge of the district court allowed $602.50, with legal interest.
The defendant has taken this appeal.
The plaintiff answered the appeal, and asked for an increase of the amount allowed to the sum claimed by him in his petition.
The evidence is fairly conclusive that the foreman of the switchman directed him to uncouple the cars by going between the two cars and disconnecting them, by taking out the coupling pin.
The plaintiff testified: That unexpectedly *140 the slack of the cars rolled back and caused the accident.
That the defect in the coupler was latent.
We are informed by the testimony of plaintiff, that he attempted to raise the operating lever of one of the connected cars. It was fastened. 1-Ie could not raise it. He then tried the other connected car. The chain connecting the lever and the pin was disconnected. The lever would not work and pull up the chain.
The switchman, who was defendant’s foreman, testified: That neither lever was in a working condition. That he had ordered the plaintiff, not knowing of the defectiveness of the appliance, to “cut the car off” ; that is, to uncouple the cars. That he, in company with the car inspector of the New Orleans Great Northern Railroad Company came to 'the car after the accident and tried to lift it with his hand. That the bracket on top of the coupler had been forced down. It could not be moved with the hand. • The chain was disconnected.
“The J. C. car and the other car were disconnected from the lug. The little chain was broken.”
That when the switchman cannot uncouple a car with a coupling lever he was expected to use his hands.
He testified further that plaintiff was a careful man at all times, and he did not know that he ever assumed unnecessary risks. This foreman was standing a few feet from the place of the accident at the time. This witness adds, regarding the direct cause, that the slack of the car was rolling back at the moment, and that he (the witness) did not at the moment think that the slack would roll back on that car.
The question was propounded to the witness:
“Q. He says, if the slack had not rolled back, lie wouldn’t have got hurt, and that he wouldn’t have gone in unless some one told him to. What was the cause of the accident?
“A. Defective equipment.”
He did not think he was negligent.
This foreman explains with particularity that he did not think that the slack would roll back; that to avoid accidents they had signaled the train to stop as before mentioned.
That there were 12 cars in the train, but that the train was not going fast enough, as he thought, to make the slack at the time that plaintiff was hurt.
That the coupler was automatic. At first this witness said that the defect was concealed or latent, but adds, on cross-examination, that if the apparatus had been carefully examined by the inspector he should have seen the defect. That it was the duty of the inspector to try the couplings to see if they would work.
Another switchman testified that the inspector tried to lift the lever when he came to it, and that it would not work.
His (plaintiff’s) finger was caught between the coupler and the bumper. That he must have been trying to raise the pin, the chain in his hands. The chain was about four inches long and was disconnected from the pin.
Another witness, a switchman, said that he tried to work the automatic coupler after the accident. This was about an hour and a half after the accident. It would not work. The operating rod would not work. He described the part out of repair, and testified most positively regarding the defectiveness of the apparatus.
The witness for the defendant, first the inspector, said that he had examined the J. G. car and found it in good condition. That was some days prior to the accident.
The car inspector for the New Orleans Great Northern Railroad Company, did not testify that the lever was in good condition. I-Ie does not create the impression by his testimony that the apparatus was in good order. He made some repairs in the apparatus.
*142 While the witnesses do not entirely agree with the plaintiff’s witnesses, the decided preponderance is with the plaintiff’s witnesses.
The plaintiff suffered intense pain, doubtless. He was receiving $2 a day at the time. Since the accident and his cure, he has returned to work. He is obliged to accept something less as an employé of the railroad. He was- 41 days in the care of a physician. He is a good man.
Plaintiff alleged the Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]) and the Employers’ Liability Act, enacted to protect railroad employés, had not been complied with, that it was the duty of defendant to provide safe place and safe appliances, that defendant’s cars were engaged in interstate commerce, and that plaintiff was at the time engaged in making interstate commerce trains.
The defendant appeared in the first place only for the purpose of excepting to the service, on the ground that it had not been made on the defendant as required. It prayed that the service returned be quashed. The exception was withdrawn. Subsequent to its withdrawal, a default was entered on the minutes, and no exception was thereafter filed. Nothing is left for the court’s action on this exception.
The defendant denied that the injury to plaintiff was caused by its fault or negligence, and denied that the equipment was defective, and alleged that the car had been carefully inspected prior to the accident, and that there was no apparent defect in the coupling and safety appliance of the car. It charged that the injury was due entirely to the negligence of plaintiff.
[1] The plaintiff sustained his cause with ample testimony. He was at his usual work for his employer, and he had no reason to suspect that the appliances were out of order, or that at the moment the lever did not yield as he pulled it, the train would move and come down upon him with its rolling slack and catch his hand just as he was in the act of pulling the chain and uncoupling the ears.
The preponderance of the testimony being that the inspector did not, in time before the accident, make a careful inspection of the drawhead, it already places the defendant to disadvantage in its defense. The appliance was not in good repair, and in other respects, also, the defendant failed to sustain the allegations of its answer noted above.
The testimony does not sustain the view expressed by the defense that the work of uncoupling the cars might have been done without plaintiff’s exposing himself. The testimony in this respect also fails to sustain that contention. It was the usual way, we gather from the testimony of the witnesses.
It is sometimes preferable not to readily accept the testimony of a large number of witnesses. The minority in testifying may testify to the right facts, despite the statements of other witnesses.
In this instance, however, the judge who tried the case without a jury saw the witnesses as they testified. He must have been convinced of the correctness of their statements.
[2] The plaintiff sought to have this cause considered as entirely within the federal statute adopted recently for the protection of railroad employes.
He has cited a number of decisions upon the subject, and it is true that rights arising under the act in question may be enforced as of right in the courts of the state.
The testimony of plaintiff fails to amply show that the trains were engaged in interstate commerce, although, were we at liberty to consider that it is eoinmon knowledge that plaintiff is engaged in that commerce, the proof would then be ample.
*144 The result would be the same under either law.
The plaintiff has asked for an increase. We have not judged it proper to increase the amount, and have concluded that in all respects the judgment is correct.
For reasons stated,' the judgment is affirmed.
PROVO STY, J., takes no part, not having heard the argument.